# UNITED STATES DISTRICT COURT

for the

District of Columbia

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

TWO CELL PHONES CURRENTLY IN THE CUSTODY OF THE ATF FIELD DIVISION UNDER RULE 41

)
)
)
)
)
)

Case No. 21-sw-357

Under Seal

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, hereby incorporated by reference.

located in the _____ District of _____ Columbia _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, hereby incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C § 371, 18 U.S.C § 922(a)(1)(A), 18 U.S.C § 922(g)(1), and 18 U.S.C § 2 | Conspiracy to Commit an Offense Against the United States, Engaging in the Business of Dealing in Firearms without a License, Unlawful Possession of Firearms by Prohibited Persons – Felons, and Aiding and Abetting |

The application is based on these facts:

See attached Affidavit in support of Search Warrant, which is incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Matthew Hopkins, Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date: _____ 10/27/2021 _____

_____
*Judge's signature*

City and state:  District of Columbia

G. Michael Harvey, United States Magistrate Judge
_____
*Printed name and title*

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

❐ Original          ❐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>TWO CELL PHONES CURRENTLY IN THE<br>CUSTODY OF THE ATF FIELD DIVISION<br>UNDER RULE 41 | )<br>)<br>)<br>)<br>)<br>) | Case No.  21-sw-357 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ Columbia
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A, hereby incorporated by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B, hereby incorporated by reference.

**YOU ARE COMMANDED** to execute this warrant on or before    November 10, 2021    *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ❐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ G. Michael Harvey _____ .
*(United States Magistrate Judge)*

❐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❐ for _____ days *(not to exceed 30)*   ❐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    10/27/2021 _____

City and state:    District of Columbia _____      _____
                                                                                  *Judge's signature*

                                                                G. Michael Harvey, United States Magistrate Judge
                                                                *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>  21-sw-357 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

                                              _____
                                                   *Executing officer's signature*

                                              _____
                                                      *Printed name and title*

## <u>ATTACHMENT A</u>

<u>Property to Be Searched</u>

A.  One (1) black iPhone, unknown model, in a black case.  A unique IMEI is listed on the SIM Card Tray of the device and is listed as "352888115081624".  This item is also uniquely identified as ATF Item #000013.  This phone is in the custody of ATF and is located at the ATF Washington Field Division, 90 K Street NE, Washington D.C.

B.  One (1) pink and white iPhone, unknown model, in a black case.  A unique IMEI is listed on the SIM Card Tray of the device and is listed as "356710088319581".  This item is also uniquely identified as ATF Item #000014.  This phone is in the custody of ATF and is located at the ATF Washington Field Division, 90 K Street NE, Washington D.C **.**

**ATTACHMENT B**

Property to Be Seized

The items, information, and data to be seized are fruits, evidence, information relating to, contraband, used in the commission of a firearms trafficking/possession offense in violations 18 USC §§ 371 (Conspiracy to Commit and Offense Against the United States), 922(a)(1)(A) (Engaging in the Business of Dealing in Firearms without a License), 922(g)(1) (Unlawful Possession of Firearms by Prohibited Persons – Felons), and 2 (Aiding and Abetting)(the "TARGET OFFENSES"), including, but not limited to: call logs, phone books, photographs, voice mail messages, text messages, images and video, Global Positioning System data, and any other stored electronic data:

a. establishing or documenting the commission of the target offenses;

b. identifying locations where the individual committed the target offenses, traveled to before and after the commission of the target offenses, and in preparation for the target offenses;

c. reflecting the ownership and use of the items identified in Attachment A by the individual committing the target offenses;

d. documenting meetings and communications between individuals committing one or more of the target offenses;

e. reflecting communications between the individual committing one or more of the target offenses and other individuals, discussing the commission of one or more of the target offenses;

16

f.  reflecting communications between the individual committing one or more of the target offenses and other individuals who may have assisted or provided support in the commission of one or more of the target offenses;

g.  containing photographs or video that would constitute evidence of a violation of the target offenses; and

h.  documenting or containing evidence reflecting the identity of persons committing the target offenses.

17

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>TWO CELL PHONES CURRENTLY IN THE CUSTODY OF THE ATF FIELD DIVISION UNDER RULE 41 | Case No. 21-sw-357 |

### AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT AND ORDER

I, Matthew Hopkins, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) (hereinafter, "your affiant" or "I"), being duly sworn, depose, and state as follows:

### INTRODUCTION

1.    I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—all digital devices—which are currently in law enforcement possession (the "TARGET DEVICES"), as described in Attachment A, and the extraction from that property of electronically stored information as described in Attachment B.

### AGENT QUALIFICATIONS

1.    Your affiant has been a Special Agent ("SA") with the ATF since January 2016 and is an investigative law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 United States Code. Your affiant is empowered by law to conduct investigations and to make arrests for the offenses enumerated in Section 2516 of Title 18, United States Code. Your affiant has received training and experience in interviewing and interrogation techniques, surveillance techniques, arrest procedures, search and seizure, and asset forfeiture, and in gang, organized crime, money laundering, and drug investigations, including the possession with intent to distribute and distribution of controlled substances, and conspiracies

and offenses associated with the foregoing criminal offenses which are prohibited by Title 21, United States Code, Sections 841(a)(1), 843(b), and 846, and Title 18, United States Code, Sections 922, 924, 1956, and 1957. Your affiant's training includes successful completion of the Criminal Investigator Training Program ("CITP"), instructed by the Federal Law Enforcement Training Center ("FLETC"), and the Special Agent Basic Training, instructed by the ATF National Academy, both are located at FLETC, Glynco, Georgia. Additionally, your Affiant was a sworn Police Officer, with the United States Park Police ("USPP"), Washington, D.C., from May 2010 until January 2016. Your Affiant successfully completed the Uniformed Police Training Program ("UPTP"), instructed by FLETC, and Agency Specific Basic ("ASB") training program for the USPP.

2.       Your Affiant has successfully completed numerous training programs hosted by ATF, FLETC, and other local/state/federal law enforcement agencies and organizations. Your Affiant has received specialized training in the investigation of local, state, and federal crimes involving the trafficking of firearms and controlled substances. This includes training on the exploitation of data stored on electronic devices and information stored on cloud-based services for the purpose of criminal investigations. Your Affiant has participated in numerous drug and firearm trafficking investigations that resulted in the arrest of numerous subjects, the seizure of property and assets, and the seizure of controlled substances.

3.       Since this affidavit is being submitted for the limited purpose of obtaining a search warrant for the TARGET DEVICES, I have not set forth every fact learned during the course of this investigation. Rather, this affidavit contains information necessary to demonstrate probable cause in support of the above-referenced search warrant. I make this affidavit based, in part, on my personal knowledge and observations derived from my participation in this

2

investigation, information provided by other law enforcement officers, reports and data provided by other officers, which I have read and reviewed, and, in part, upon information and belief. All observations referenced in this affidavit, that your Affiant did not personally make, were relayed to your affiant by the person or persons who made such observations or in reports and documents that detailed the events described by that person or persons.

4. This affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—two (2) electronic devices, the TARGET DEVICES—which are currently in the possession of the ATF located at 90 K Street NE, Washington, D.C.—and the extraction from that property of electronically stored information as described in Attachment B.

5. Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of 18 USC §§ 371 (Conspiracy to Commit an Offense Against the United States), 922(a)(1)(A) (Engaging in the Business of Dealing in Firearms without a License), and 922(g)(1) (Unlawful Possession of Firearms by Prohibited Persons – Felons), and 2 (Aiding and Abetting) (the "TARGET OFFENSES") have been committed by Milique N. Wilson, Joseph Vincent Smith, and other unidentified individuals. There is also probable cause to search the TARGET DEVICES, further described below and in Attachment A, for the things described in Attachment B.

6. Based on your Affiant's training, experience, and participation in investigations, and the training and experience of other law enforcement agents with whom your Affiant is working on this investigation, your Affiant knows that:

        a. It is common for individuals engaged in the illegal trafficking/possession of firearms to use telephonic communications, both cellular (to include voice and text

messages) and hard line, to further their criminal activities by coordinating the distribution and acquisition of firearms, illegal proceeds of such trafficking, and other efforts of co-conspirators;

b.   Individuals engaging in the illegal trafficking/possession of firearms use cellular telephones and cellular telephone technology to communicate and remain in contact with customers or possessors of those firearms; and

c.   Individuals who engage in the illegal trafficking/possession of firearms use cellular telephones to exchange information with customers and/or sources of supply through text messaging and instant messaging in addition to direct telephone conversations. It is also common for firearms traffickers/possessors to send photographs and videos as exchange of information with customers and/or source(s) of supply.

d.   Cellular telephones used by firearms traffickers/possessors contain valuable information and evidence relating to their activities. Such information consists of, but is not limited to: call logs, phone books, photographs, voice mail messages, text messages, images and video, Global Positioning System data, and any other stored electronic data. This information can: (i) reflect the preparation for, arrangement of, and commission of the trafficking; (ii) identify locations where traffickers traveled to before and after transporting or selling contraband; (iii) reflect the ownership and use of the cellular telephones and firearms by the traffickers; (iv) document meetings and communications between traffickers, their customers, associates, and co-conspirators; (v) reflect communications between traffickers and other individuals, discussing the trafficking and possession of firearms; (vi) reflect communications between traffickers and other individuals who may have assisted or provided support in the trafficking or possession of

4

the firearm(s); (vii) document or contain evidence of the obtaining, secreting, transfer, expenditure and/or the concealment of contraband relating to the trafficking; and (viii) document or contain evidence of the purchase of items from the assets derived from the trafficking of contraband.

e.   Individuals involved in firearms trafficking/possession often use cellphone cameras to take video recordings and photographs of themselves or other members of the organization often engaging in illegal activities, such as the brandishing of firearms or distribution of narcotics.

f.   Individuals with a prior felony conviction(s) are prohibited from purchasing and possessing firearms, and ammunition, pursuant to Title 18 U.S.C. § 922(g).

g.   Individuals that are prohibited from purchasing firearms, through legal means (from a Federal Firearms Licensee (FFL)), use cellphones to communicate with individuals, that are legally allowed to acquire firearms through an FFL, private sale, or otherwise legal means, in an attempt to obtain a firearm(s) illegally.

## **TECHNICAL TERMS**

7.   Based on your affiant's training and experience, I use the following technical terms to convey the following meanings:

a.   Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line"

5

telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.      Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.      Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This

6

removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.      GPS: A GPS navigation device uses the global positioning system to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The global positioning system consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.      PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same

7

capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include GPS technology for determining the location of the device.

   f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

   g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

8. Based on your Affiant's training, experience, and research, your Affiant knows that Devices, similar to the TARGET DEVICES, have capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In your Affiant's training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggest who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

9. Based on your Affiant's knowledge, training, and experience, your Affiant knows that electronic devices can store information for long periods of time. Similarly, things that have

been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

10.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crime(s) described on the warrant, but also forensic evidence that establishes how a Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on a Device because:

a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.      Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how

a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

     e.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

11.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your affiant is applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

12.    *Manner of execution.* Because the devices are currently secure in law enforcement custody, your affiant submits there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night. Further, because this warrant seeks permission to examine an already-seized device, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, your affiant submits there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **PROBABLE CAUSE**

13.    Since December 2019, ATF has been investigating illegal firearms trafficking and possession of firearms by Milique N. Wilson and Joseph Vincent Smith. Both Wilson and Smith have previously been convicted of crimes punishable by a term of imprisonment of more than a year. A criminal records check reveals that on October 7, 2011, WILSON was sentenced by the Circuit Court for Prince George's County to fifteen (15) years confinement, six (6) years of the

sentence was suspended, and five (5) years' probation, for Assault 1st Degree and five (5) years confinement for Use Handgun/Crime of Violence. Accordingly, Wilson has previously been convicted of a crime punishable by a term of imprisonment of more than one year.

14.     Using a confidential informant and ATF undercover, ATF made various purchases of firearms from Smith from December 2019 to September 2021. Over the course of these purchases, Smith indicated that he was obtaining the firearms from Wilson and introduced Wilson to the confidential informant and ATF undercover. In one of the buys, on December 18, 2019, Wilson provided the confidential informant a Kahr Arms CM40, .40 caliber pistol and indicated that he had a close friend whose relatives own a firearms store in Virginia and that he could obtain more weapons. On June 3, 2021, Smith and Wilson sold an unserialized privately manufactured firearm (PMF) to an ATF undercover. During the sale, Wilson stated that he knows a "Spanish guy" in Frederick, Maryland that can build unserialized firearms and that he could also get AR pistols and long guns.

15.     On August 27, 2021, Wilson was arrested in the drive-thru of a Chick-Fil-A in Northeast DC after another motorist observed him with a firearm. As officers instructed Wilson to get out of the car, they seized a privately manufactured firearm from Wilson's waistband with 17 round rounds of 9mm caliber ammunition. During a subsequent interview with the Metropolitan Police Department (MPD), Wilson admitted the firearm was his and claimed he was using it for his protection.

16.     On September 7, 2021, a federal grand jury in the District of Columbia indicted Wilson in a two-count indictment for possessing ammunition as a prohibited person, in violation of 18 USC 922(g)(1), and for unlawfully possessing a firearm with a prior conviction, in violation of 22 DC Code 4503(a)(1) in criminal case number 21-561-RJL.

17.     On September 28, 2021, a federal grand jury issued a superseding indictment in 21-561-RJL charging Wilson and Smith in an eight-count indictment, for firearms trafficking, in violation of 18 USC 922(a)(1)(A), 371, and 2, as well as multiple counts of possessing firearms as convicted felons, in violation of 18 USC 922(g)(1).

18.     As part of its investigation, ATF has extracted/reviewed ATF Item #000016, which is a silver LG cellular phone, later found bearing IMEI 356284102890753, that was located and seized during a September 22, 2021, residential search warrant at 1375 Congress Street SE, Washington D.C.  Based upon interviews of the mother of Wilson's child, it was determined that this phone belonged to Wilson. During an examination of the phone, your Affiant observed photos of firearms that were sold to the undercover ATF agent during controlled purchases. In addition, your Affiant located a contact in the phone identified as "Build Plug" with phone number (301) 458-3536.  It is your Affiant's belief that "Build Plug" refers to a contact who can build and supply privately manufactured firearms. There are seventeen (17) total phone calls between WILSON and "Build Plug" from August 25, 2021, to August 27, 2021 that your Affiant was able to observe on the silver LG cellular phone.

19.     In the software used to view the phone extraction, there is a tool that allows the examiner to view a chronological usage of the phone.  During this examination, your Affiant observed a significant increase in the phone's usage starting in July 2021 and going through September 2021.

20.     During its investigation, ATF learned that Wilson was the subject of another investigation in which Wilson shot and killed an individual on July 3, 2021, while he was working as a security guard for an apartment building. During Wilson's interactions with MPD Detectives on July 3, 2021, the TARGET DEVICES were taken into police custody pursuant to

the homicide investigation.  At one point during MPD's interview of Wilson, Wilson consented to a search of the TARGET DEVICES.  However, later Wilson withdrew his consent and stated that any requests from law enforcement would need to go through his legal representative.

21.     It is your Affiant's belief that the increase in the silver LG cellular phone's usage from July 2021 to September 2021 occurred because the above-mentioned seizure of the TARGET DEVICES.

22.     During a June 3, 2021 controlled purchase of a firearm between WILSON and an ATF confidential informant, Wilson provided (202) 412-6912 as his cell phone number. A search warrant for toll records and location data was obtained for this number from U.S. Magistrate Judge Harvey (21-SC-2238). An analysis of the search warrant return reveals that WILSON had a total of 204 transactions (calls and text messages) with "Build Plug" from May 13, 2021, to June 22, 2021.  Lastly, an analysis of the location data associated to WILSON's phone, on June 3, 2021, shows that the phone had moved from Cedar Street SE, Washington D.C. (the location of the firearms controlled purchase) to Frederick, Maryland (the location where Wilson said he had a "Spanish guy" that can build unserialized firearms).

23.     On July 22, 2021, your Affiant took custody of the TARGET DEVICES and placed them into ATF custody. Based on the aforementioned facts, your Affiant believes that WILSON was using the TARGET DEVICES to conduct firearms trafficking activity and that they contains information relevant to the TARGET OFFENSES.

## CONCLUSION

24.     Your Affiant submits that this affidavit supports probable cause to support a search warrant authorizing the examination of the TARGET DEVICES, which are described in Attachment A, to seek the items described in Attachment B, violations of 18 USC §§ 371

(Conspiracy to Commit and Offense Against the United States), 922(a)(1)(A) (Engaging in the Business of Dealing in Firearms without a License), 922(g)(1) (Unlawful Possession of Firearms by Prohibited Persons – Felons), and 2 (Aiding and Abetting) (the "TARGET OFFENSES") .

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Respectfully submitted,

_____
Matthew Hopkins, Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on October 27, 2021.

_____
HONORABLE G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE